```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                    CR 11-223 (PAM)
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Government's Response to |
| Plaintiff, | ) | Defendant's Motion for |
| V. | ) | Downward Departure |
| | ) | |
| GEORGE THOMPSON, | ) | |
| | ) | |
| Defendant. | ) | |

The United States, by and through its attorneys, B. Todd Jones, United States Attorney for the District of Minnesota, and Ann M. Anaya, Assistant United States Attorney and Nicole Lee Ndumele, Trial Attorney for United States Department of Justice Civil Rights Division, hereby submits the following response to defendant Thompson's Motion for a Downward Departure.

### **INTRODUCTION**

On August 10, 2011, the defendant pled guilty to a one-count Information charging him with assaulting an 82-year-old man of Somali descent, while yelling ethnic and religious slurs at the victim, in violation of 18 § U.S.C. 249.  On September 20, 2011, the U.S. Probation and Pretrial Services Office provided counsel with a Presentence Report (PSR).  The PSR included a three-level enhancement to the defendant's base offense level because of the defendant's hate crime motivation, pursuant to U.S.S.G. § 3A1.1(a), and a two-level enhancement because of the victim's advanced age, pursuant to U.S.S.G. § 3A1.1(b).  The defendant has filed objections to both of those enhancements, and has asserted

that these enhancements impermissibly double count factors that are elements of the crime itself. (Doc. 12). The defendant also seeks a downward departure based on U.S.S.G. 5C1.2 and the sentencing factors enumerated in 18 U.S.C. § 3553. For the reasons provided below, the defendant's objections to the PSR and his request for a downward departure are without merit and should be denied.

**ARGUMENT**

    A.   <u>The sentencing adjustments contained in U.S.S.G. §§ 3A1.1(a) and (b) are applicable in this case and do not constitute impermissible double counting</u>.

    1.   <u>Section 3A1.1(a)</u>

Section 3A1.1(a) of the sentencing guidelines includes a three-level enhancement for offenses involving a hate crime motivation. Pursuant to this Section, a court should increase a defendant's offense level by three points "if the court determines beyond a reasonable doubt that the defendant intentionally selected any victim...as the object of the offense ...because of the [victim's] actual or perceived...religion [or] national origin." U.S.S.G. § 3A1.1(a). The defendant has pled guilty to willfully causing bodily injury to the victim "because of [the victim's] actual and perceived religion and national origin." (Doc. 1). Because it is undisputed that the defendant's actions satisfy the criteria set forth in Section 3A1.1(a), the three-level hate crime enhancement should be applied in this case.

Defendant asserts, without legal citation, that it is impermissible double counting to apply the hate crime enhancement in this case because the defendant's unlawful bias was already accounted for in the offense for which he pled guilty. This proposition has no merit. Impermissible double counting occurs when "one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Rohwedder, 243 F.3d 423, 426-427 (8th Cir. 2001); see also United States v. Hawkins, 181 F.3d 911, 912 (8th Cir.), cert. denied, 528 U.S. 981 (1999); United States v. Hipenbecker, 115 F.3d 581, 583 (8th Cir. 1997). The parties and probation agree that U.S.S.G. § 2H1.1 is the correct base guideline range for the defendant's Section 249 crime. Section 2H1.1 is intended to address all crimes involving individual rights and it is not limited to crimes involving a hate crime motivation. For example, Section 2H1.1 is also the guideline range for several non-hate crime offenses including 18 U.S.C. § 242 (dealing with deprivations of rights under color of law, commonly the use of excessive force by police officers), 18 U.S.C. § 247(a) (dealing with damage or destruction of religious property), and 18 U.S.C. § 248 (dealing with freedom of access to clinic entrances). As these examples make clear, Section 2H1.1 provides the same base offense level for hate crime and non-hate

crime offenses.  Accordingly, Section 2H1.1 in no way accounts for the fact that some of the crimes sentenced under this provision are predicated on a hate crime motivation.  Therefore, it is not double counting to account for this motivation elsewhere in the guidelines, namely Section 3A1.1(a).

It is precisely for this reason that courts have rejected claims that applying the hate crime enhancement to bias-motivated crimes constitutes impermissible double counting.  In United States v. Odeh, 552 F.3d 93 (S.D.N.Y. 2007) the court rejected the defendant's argument that the hate crime enhancement was double counting because this motivation was expressly accounted for in his conviction for conspiracy to murder nationals of the United States.  The court found that "it is the very fact that he was convicted of th[is] offense[] that justifies the application of the hate crime...enhancement[.]" Odeh, 552 F.3d at 153.  The court opined that the enhancement was necessary because the base offense level applied in the case, U.S.S.G. § 2A1.5(c)(1) (conspiracy to commit murder), applied "to all murder conspiracies and contains no additional punishment for the 'discrete harm[]' of targeting victims based upon their national origin." Id.

Similarly, in United States v. Endsley, No. 08-40050-01-SAC, 2009 Lexis 11796(D. Kan. Feb. 17, 2009), the defendant argued on appeal that it was impermissible to apply the hate crime

4

enhancement to the federal criminal fair housing statute, 42 U.S.C. § 3631, because the "enhancement [§ 3A1.1(a)] 'double counts' an element required for commission of the offense." Endsley, 2009 Lexis 11796, *8.  However, the court stated that because the § 2H1.1 guideline was not "intended to address all crimes motivated by hate," the § 3A1.1 enhancement should be applied even though racial intent is an element of a § 3631 violation. Id. at *9. See also United States v. Popisil, 186 F.3d 1023, 1031 (8th Cir. 1999)(applying hate crime enhancement to defendants convicted of conspiracy and a substantive civil rights violation for burning a cross in the yard of a black family's home); United States v. Crook, No. 99-4378, 1999 U.S. App. LEXIS 26275(4th Cir. 1999) (upholding § 3A1.1(a) sentencing enhancement for a civil rights conviction based on placing threatening letters in the mailboxes of African-American college students); United States v. Smith, 365 F. App'x 781 (9th Cir. 2010) (upholding a § 3A1.1(a) enhancement for a fair housing violation for threatening to hang an African-American man, burn a cross outside his home, and assault his family).

    Even if the hate crime enhancement was considered to be double counting in this instance, "double counting is permissible if the Sentencing Commission intended that result and each section concerns conceptually separate notions relating to sentencing." United States v. Rohwedder, 243 F.3d 423, 427 (8th

Cir. 2001); <u>United States v. Hipenbecker</u>, 115 F.3d 581, 583 (8th Cir. 1997).  That two-part test is met in this case.  First, the plain language of Section 2H1.1 makes clear that the hate crime enhancement is intended to be applied to the offenses falling within its purview.  An Application Note following Section 2H1.1 states that if "in the case of a plea of guilty or *nolo contendere*, the court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim...as the object of the offense because of the actual or perceived...religion [or] national origin...of any person, an additional 3-level enhancement from § 3A1.1(a) will apply."  U.S.S.G. § 2H1.1, cmt. n 4.  Second, as stated above, Sections 2H1.1 and 3A1.1 deal with conceptually separate notions relating to sentencing in that Section 2H1.1 deals with violations of individual rights generally and Section 3A1.1 deals with the specific subset of violations motivated by a prohibited religious or ethnic bias.  The guidelines intentionally and expressly require the application of the hate crime enhancement to crimes sentenced under Section 2H1.1 because Section 2H1.1 does not account for the separate harm of targeting victims based on their religious or ethnic background.  Therefore, that enhancement must apply in this case.

    2.    <u>Section 3A1.1(b)</u>

Pursuant to Section 3A1.1(b), the court should apply a two-level enhancement to the defendant's offense level "if the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b). The defendant knew that the victim, who was in his early eighties when assaulted, was vulnerable due to his advanced age. The defendant admitted to not only being aware of the victim's age, but also to targeting the victim because of the victim's advanced years. As the defendant has stated, one of the reasons he chose the victim for attack was because the victim was an elder in the Somali community.

Applying the vulnerable victim enhancement to the defendant's base offense level is not impermissible double counting. Section 3A1.1(b) is applicable as long as "the factor that makes the person a vulnerable victim" is not incorporated in the base offense level. U.S.S.G. § 3A1.1 cmt. n.2. Because § 2H1.1 does not incorporate the age of the victim into the base offense level, the vulnerable victim enhancement should be applied.

Moreover, it is not double counting to apply an enhancement under both subsections (a) and (b) of Section 3A1.1 so long as there is a distinct basis for the enchantments under each subsection. As the Application Note to Section 3A1.1 states, "the adjustments from subsections (a) and (b) are to be applied

7

cumulatively." U.S.S.G. § 3A1.1, cmt. n.3.  Subsection (b) can be applied cumulatively to subsection (a) as long as the victim was "unusually vulnerable for reasons unrelated to [his]... religion [or] national origin." Id.  Subsections (a) and (b) should be applied cumulatively here because the victim's unusual vulnerability is his age, which is entirely unrelated to his religion or national origin.

    B.   <u>A downward departure from the guideline range is not warranted by U.S.S.G § 5C1.2 or 18 U.S.C. § 3553</u>.

    1.   <u>U.S.S.G. § 5C1.2</u>

The defendant seeks a downward departure based on the safety-valve provision of Section 5C1.2.  Section 5C1.2 "applies only to statutes with mandatory minimum sentences." <u>United States v. Heilmann</u>, 235 F.3d 1146, 1148(8th Cir. 2001).  A departure based on this provision is unwarranted because 18 U.S.C. § 249 does not have a mandatory minimum sentence.

    2.   <u>18 U.S.C. § 3553</u>

Title 18, Section 3553 establishes factors this Court must consider when imposing sentence.  That statute provides, in pertinent part, that the Court <u>shall</u> impose a sentence "sufficient, but not greater than necessary, to comply" with the need to: (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant;

8

and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2). In the instant case, a sentence including a period of incarceration, as dictated by the Sentencing Guidelines range for this offense, is necessary to account for the seriousness of the offense and the need for deterrence.  See 18 U.S.C. § 3553 (a)(2)(A) and (B).  The defendant's request that the court depart substantially from the guideline range and sentence the defendant to probation would not adequately take these factors into account.

Assaulting and yelling ethnic and religious slurs at an 82-year old man is unquestionably a serious offense.  Bias-motivated assaults undercut the foundation on which this country stands. The defendant, by his own account, targeted the victim in this case because the defendant perceived Somalis and Muslims to be criminals.  Therefore, the defendant wanted to punish the victim for the perceived indiscretions that the defendant attributed to all members of the victim's religious and ethnic group.  The defendant's unprovoked attack of an elderly stranger because of the stereotypes the defendant holds regarding Somali and Muslim Americans is a serious violation of federal law.  This Court's sentence must make clear that our laws, and the courts who

interpret and uphold them, will not tolerate this type of bias-based crime.

It bears noting that the seriousness of this crime also needs to be imparted to the defendant, who while admitting to assaulting the victim because of the victim's religion and national origin, likens his behavior to a fight among rival professional football fans.  This wholly inapt analogy fails to acknowledge the unlawful religious and ethnic bias at the heart of this offense.  The defendant did not assault the victim because of a difference of opinion relating to a football team or relating to any other issue.  The fact is that the defendant know nothing about the victim or his opinions.  All the defendant knew about the victim was that he appeared to be Muslim, Somali, and elderly.  The defendant assaulted this elderly stranger for only one reason- because of the stereotypes of criminality that the defendant attributed to Muslims and Somalis in general and therefore to the victim in particular purely because the victim was a member of that religious and ethnic group.  This is the archetype of a bias-motivated assault.  It is a serious infraction and the seriousness of the defendant's actions should be reflected in the defendant's sentence.

A sentence within the guidelines range is also necessary to promote respect for the law.  A downward departure below what the guidelines determines to be a just sentence could send the

unintended message to the defendant, to future assailants, to the victim, and to members of the victim's community that assaults against Somali and Muslim Americans are not taken seriously.

Moreover, a guidelines sentence can also serve to deter those who know of this crime and sentence from committing similar offenses. It will also serve to deter the defendant who has a pattern of engaging in bias-motivated behavior. Yet, incongruously, the defendant seeks probation because he claims that his crime was "conspicuously out-of-character" for him. The facts simply do not support this claim.

A mere three months after this incident, the defendant was charged in state court with threatening to kill another Somali individual on the same street where the defendant had previously attacked the victim in this case. The terroristic threats charge was dismissed once this case was filed in federal court. In the state case, the defendant approached the second Somali victim and asked that victim whether he was from Somalia on July 27, 2010. When the victim responded affirmatively, the defendant chased him and threatened to kill him. However, the victim was able to elude the defendant by running to and seeking protection from Minnesota Police Department officers who were in the vicinity for another matter.

Based on the seriousness of this bias-motivated assault and the need to deter the defendant from future criminal conduct, a

11

downward departure from the guidelines sentence is unwarranted and sentence within the guideline range is reasonable.

Date: 11/22/2011

B. TODD JONES
United States Attorney

s/ Ann M. Anaya

BY: Ann M. Anaya
Assistant U.S. Attorney
and
Nicole Lee Ndumele
Trial Attorney
United States Department of Justice
Civil Rights Division
Criminal Section